[No. A036334. First Dist., Div. Three. Dec. 10, 1987.]

COMMERCIAL UNION INSURANCE COMPANY, Petitioner, v. THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent; FRANCIS WALKER, Real Party in Interest.

**COUNSEL**

Graham & Knight and Anthony E. Graham for Petitioner.

No appearance for Respondent.

Thomas Becker, Geri Ann Johnson and Harland & Gromala for Real Party in Interest.

**OPINION**

MERRILL, J.—Petitioner, an insurance company defending a coverage action, challenges denial of its motion for summary judgment. Petitioner sought to show that its general business policy did not cover an intentional firing by the insured of one of his employees. We conclude that the court erred in interpreting the policy and in denying the motion.

Real party in interest is a licensed insurance agent, doing business as a sole proprietorship. He was sued for wrongful discharge by a former employee and the employee's wife. He tendered the defense to petitioner, but petitioner denied coverage and refused to defend. Real party eventually settled the wrongful discharge action for $7,200 and brought this action against petitioner to recover the settlement cost and attorney fees and other defense costs.

Real party claims coverage under petitioner's "office package policy." Under that policy, petitioner will pay damages which are the result of "1. *bodily injury,* or [¶] 2. *property damage,* [¶] caused by an *occurrence,* insured by this policy, and: . . . [¶] (b) arising from *your* business operations conducted at or from the *insured premises.*" Petitioner has the right and duty to

defend the insured against any suit seeking damages payable under the policy. (*Ibid.*) "Occurrence" is defined by the policy to mean "an accident, including, continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage*. This injury or damage must be neither expected nor intended by *you*. . . ."

■ The parties to this proceeding agree that for coverage to exist, termination of the employee must be an "occurrence" within the meaning of the policy. They also agree that termination of the employee was intentional. Their dispute centers on the definition of "occurrence." Petitioner contends that an intentional firing is not an occurrence. Real party argues that it is an occurrence within the meaning of the policy whenever the damages are not expected. He asserts that he did not expect the employee to experience severe emotional distress as a result of the termination.

In a lengthy written decision, analyzing the three key cases, the trial court agreed with real party. It found triable issues of fact because it concluded that while real party may have intended the act of termination, the resultant injury or damage might be the result of an accident arising from "extrinsic causes, occurring unexpectedly or by [chance], or happening without intent or through carelessness." Our analysis of these cases leads us to a different conclusion.

*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], was the first of these three cases. The policy there required the insurer to pay damages and defend "any suit against the insured alleging such bodily injury or property damage." The policy had an exclusion for "bodily injury or property damages caused intentionally by or at the direction of the insured." The suit which the insured asked Zurich to defend was an action alleging assault by the insured. The insurer refused to defend on the ground that the complaint alleged an intentional tort. After considerable discussion, the *Gray* court concluded that the insurer was obliged to pay the insured's judgment and should have defended the action.

The *Gray* court's conclusion was based in part upon the fact that the policy broadly promised to defend and did not conspicuously or clearly condition the promise on a nonintentional bodily injury. The court concluded that the policy "led plaintiff reasonably to expect such defense" and that the exclusionary clause did not exonerate the insurer. (*Id.,* at p. 275.) The court restated the rule that a carrier "must defend a suit which *potentially*

seeks damages within the coverage of the policy." The action against the insured in *Gray* "presented the potentiality of a judgment based upon non-intentional conduct." Therefore, the duty to defend "became manifest at the outset." (*Id.,* at pp. 275, 276.)

Here, unlike the situation in *Gray,* there is no suggestion that the third party plaintiffs may have been overstating their case by alleging intentional rather than negligence-based torts.

In *St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199 [208 Cal.Rptr. 5], the second of the key cases, the exception for intentional acts was not stated as an "exclusion" but was built into the coverage definition. Yuba County's general liability policy covered the county against claims for "bodily injury or damage to tangible property resulting from an accidental event" and defined an "accidental event" as something the insured "didn't expect or intend to happen." There, as in the present case, the suit was for wrongful termination of employment. The *St. Paul Fire & Marine Ins. Co.* court concluded that the employee's termination was not an "unintentional, unexpected, chance occurrence" and that there was no potential liability under the policy. Therefore, the insured had no obligation to defend. (*Id.,* at pp. 1201, 1202.)

The court in the present case noted that there was a distinction between the language in *St. Paul Fire & Marine Ins. Co.* and the language in petitioner's policy. There, an accidental event was something the insured "didn't expect or intend to happen." Here, an occurrence is an accident "which results in bodily injury or property damage. This injury or damage must be neither expected nor intended by [the insured]." The lower court here used that distinction as a justification for failing to follow *St. Paul Fire & Marine Ins. Co.* Though we acknowledge a slight distinction in the wording, we fail to see a material difference between the policies. The trial court here erred in failing to follow *St. Paul Fire & Marine Ins. Co.* It erroneously applied the term "accident" to the consequences of the act rather than to the happening of the act itself.

Examination of the remaining case considered by the lower court reveals a reason for its error. In *Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 534-535 [226 Cal.Rptr. 435], the policy defined "occurrence" in virtually the same way it is defined in petitioner's policy: "an accident . . . which results in bodily injury or property damage neither

expected nor intended from the standpoint of the insured, . . ." The *Royal Globe* court, construing the policy as a matter of law, found that an "intentional act is not an 'accident' within the plain meaning of the word. [Citations.]" (*Id.*, at p. 537, fn. omitted.) It concluded that "[t]he same roadblock at the definition of 'accident' halts any argument claiming the appellants' assignor intended his act but not the resulting harm." (*Ibid.*)

This ruling in *Royal Globe Ins. Co.* is completely dispositive of the summary judgment motion here. An intentional termination is not an "occurrence" under the policy because it is not an accident. The definition of "accident" halts any argument that real party intended his act but not the resulting harm. The trial court here was obligated to follow *Royal Globe Ins. Co.* and grant summary judgment. (See *Auto Equity Sales* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

*Royal Globe's* dicta apparently misled the court here into analyzing and distinguishing the dicta instead of applying *Royal Globe's* holding. The dicta was clearly labeled as such. (*Royal Globe Ins. Co.* v. *Whitaker, supra,* 181 Cal.App.3d at p. 538, fn. 6.) Moreover, the dicta furnishes no ground for denying summary judgment here. It explains only that the duty to defend may arise even where the complaint alleges an intentional tort if the insured has informed the insurer of facts which would negate intention. Here, there has never been a suggestion that the termination was not intentional.

The trial court's mistake is in interpreting the policy's definition of "occurrence." The policy requires an "accident . . . which results in *bodily injury* or *property damage.* " The next sentence then explains that the "injury or damage must be neither expected nor intended." This sentence does not change the meaning of accident or remove the requirement that any injury or damage be accidentally caused. It merely explains that expected or intended injuries or damage are not "accidents" within the meaning of the policy.

The court has read the sentence "[t]his injury or damage must be neither expected nor intended by you" to imply (through silence, apparently) that coverage may exist even though *the act leading to* the injury or damage is expected or intended. No such inference may be drawn because it would contradict the plain and ordinary meaning of the word "accident." (See *St. Paul Fire & Marine Ins. Co.* v. *Superior Court, supra,* 161 Cal.App.3d at p. 1202.)

We issue a peremptory writ of mandate in the first instance. Such a procedure is proper, as we have advised real party in interest that we might act by a peremptory writ in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing the Humboldt County Superior Court to vacate its order denying summary judgment and to enter an order granting petitioner's motion.

White, P. J., and Barry-Deal, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied February 24, 1988.