[No. E002656. Fourth Dist., Div. Two. Dec. 11, 1987.]

REDINA BRADY, Plaintiff and Appellant, v.
ELIXIR INDUSTRIES, Defendant and Respondent.

**COUNSEL**

Kathryn Burkett Dickson, Joel R. Singer and Jeffrey A. Ross for Plaintiff and Appellant.

Rexon, Freedman, Klepetar & Thomas, Raymond W. Thomas, Fred B. Griffin, Linda J. Lopez, Loeb & Loeb and Gerald P. Cunningham for Defendant and Respondent.

## OPINION

**CAMPBELL, P. J.**—Plaintiff appeals a judgment against her on two causes of action for sexual discrimination and tortious constructive discharge. We reverse, holding the trial court: (1) prejudicially abused its discretion in denying plaintiff's motion during trial to amend the discrimination cause of action to allege a different factual basis; (2) prejudicially erred in instructing that constructive discharge required employer intent to cause the employee to quit.

### DENIAL OF AMENDMENT

Plaintiff brought her cause of action for sexual discrimination under the California Fair Employment and Housing Act (FEHA).[1] Plaintiff, a division manager of defendant Elixir Industries (Elixir), alleged Elixir paid her less than its *male division managers* over nearly a four-year period ending in January 1980 with her resignation caused by Elixir's sexual discrimination. In a hearing pursuant to Evidence Code section 402[2] held just before trial began, the trial court ruled plaintiff's salary could not be compared with salaries of the other division managers because she could not establish the preliminary fact that her position was substantially similar to their positions. Plaintiff does not contest this ruling.

Because this ruling excluded the factual basis that plaintiff had pleaded for her sexual discrimination cause of action, she moved, after presentation of a portion of her case, to amend that cause of action to allege Elixir paid plaintiff's *male subordinates and predecessors* more than she was paid. The trial court denied the motion because of the late stage of the proceedings and the variance between the current and proposed allegations. The trial court later granted Elixir's motion for a nonsuit as to the sexual discrimination cause of action. ■ Plaintiff correctly contends that the amendment's denial was a prejudicial abuse of discretion.

---

[1]Government Code section 12900 et seq. See, in particular, sections 12940, 12960, and 12965. Plaintiff received the notice in section 12965 permitting her to file this action.

[2]Evidence Code section 402 provides in relevant part: "(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article. [¶] (b) The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; . . ."

■ A pleading may be amended at the time of trial unless the adverse party can establish prejudice. (*United Farm Workers of America* v. *Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 915 [210 Cal.Rptr. 453, 694 P.2d 138].) Where a party is allowed to prove facts to establish one cause of action, an amendment which would allow the same facts to establish another cause of action is favored, and a trial court abuses its discretion by prohibiting such an amendment when it would not prejudice another party. (*Union Bank* v. *Wendland* (1976) 54 Cal.App.3d 393, 400-401 [126 Cal.Rptr. 549]. See also *Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 962-963, fn. 14 [218 Cal.Rptr. 839] [trial court allowed amendment to seek easements where proof presented on pleaded cause of action for inverse condemnation established right to easements].) A variance between pleading and proof does not justify the denial of an amendment to conform pleading to proof unless the unamended pleading "misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (Code Civ. Proc., § 469; *Stearns* v. *Fair Employment Practice Com.* (1971) 6 Cal.3d 205, 212-213 [98 Cal.Rptr. 467, 490 P.2d 1155].)

■ Elixir does not contend now, nor did it contend below, that the unamended pleadings misled it or that the amendment unfairly prejudiced its defense, nor could it reasonably have so argued. Plaintiff's allegations about her subordinates and predecessors were the subject of ample discovery and Elixir's opening statement. The trial court recognized that Elixir "was prepared for all of them, so nobody's claiming surprise." The record further manifests the trial court's abuse of discretion in that, although denial of the amendment prevented plaintiff from proving the sexual discrimination cause of action by showing that her subordinates and predecessors had received higher pay, paradoxically the trial court allowed plaintiff to prove these facts to show sexual discrimination as the public policy violation necessary to sustain her cause of action for tortious constructive discharge. Thus, the effect of the trial court's denial of the amendment was to admit facts to establish one cause of action while denying their admission to establish another cause of action, even though the facts and the causes of action were well known to Elixir prior to trial. Clearly, the trial court abused its discretion in denying the amendment.

Elixir argues the error did not prejudice plaintiff since the evidence concerning the subordinate and predecessor pay differentials were admitted on the tortious constructive discharge cause of action. Elixir reasons the plaintiff would have prevailed on that cause of action if the jury believed the evidence established sexual discrimination.

This argument is spurious. Proof of tortious constructive discharge according to the jury instructions would have required not only convincing

the jury the sexual discrimination occurred, but also persuading the jury: (1) of the existence of circumstances so intolerable that a reasonable person would have resigned, and (2) that Elixir intended to create those circumstances to force plaintiff to quit. Obviously the jury could have found sexual discrimination but not intolerable circumstances or intent. (See, e.g., *Pittman* v. *Hattiesburg Mun. Separate Sch. Dist.* (5th Cir. 1981) 644 F.2d 1071, 1077 [employer discriminated against, but did not constructively discharge, employee].)

Furthermore, plaintiff presented significant evidence of sexually motivated discrimination. Plaintiff presented her own testimony and that of several of her superiors who no longer worked for Elixir. This testimony indicated that, because of her sex, plaintiff was not as highly paid as she merited and was otherwise unfairly treated. Two men who were arguably her subordinates received pay substantially equal to or greater than she received. Elixir did present evidence on these issues which contradicted plaintiff's evidence. However, given the substantial character of the evidence plaintiff presented, we must conclude in the words of *Estate of Kime* (1983) 144 Cal.App.3d 246, 260 [193 Cal.Rptr. 718], that had the error not occurred, it is " 'reasonably probable' (though far from certain) that . . . the result would have been different."

## ERRONEOUS INSTRUCTION

 On the sole remaining cause of action for tortious constructive discharge, the trial court instructed the jury as follows: "In order for plaintiff to recover for constructive discharge due to unlawful sexual discrimination, plaintiff must prove by a preponderance of the evidence the following:

"1. There was, in fact, discrimination based on sex,

"2. Which discrimination existed at the time of discharge, and

"3. Which discrimination persisted after the employee protested the same to the employer, and

"4. The employer failed to eliminate the discrimination within a reasonable time after notice thereof.

"In order for the discrimination to be sufficient to amount to a constructive discharge, it must be such conduct by the employer, made with the intent to cause the employee to resign, and which sex discrimination [*sic*] conduct made working conditions so intolerable that the employee, as a reasonable person, is forced to resign."

We hold that this instruction was prejudicially erroneous.

Although none of this state's courts have addressed the issue of what facts and circumstances will constitute a constructive discharge,[3] federal district and appellate courts including the Ninth Circuit, the California Fair Employment and Housing Commission (FEHC), and a number of other state courts have dealt with this issue in statutory as well as common law contexts. All of these authorities agree that a tortious constructive discharge[4] requires proof of a violation of public policy, such as unlawful discrimination, plus circumstances so aggravated or intolerable that a reasonable employee would feel compelled to resign. However, federal and state case and administrative law have taken divergent views as to whether a third element concerning the mental state of the employer must be proved by an employee to establish constructive discharge. The majority does not require a third element, while the minority has required proof of intent, knowledge, or foreseeability on the employer's part that the employee would resign because of those circumstances. (*Nolan* v. *Cleland, supra,* 686 F.2d 806, 813.)[5]

---

[3] *Duerksen* v. *Transamerica Title Insurance Co.* (Cal.App.), an opinion of the First Appellate District, Division Four, on this issue was depublished.

We note the recent issuance of BAJI No. 10.02 requiring in part for constructive discharge ". . . that a reasonable person in the employee's position would have felt compelled to resign as a result of conduct of the employer undertaken for the purpose of forcing the employee to resign. . . ." (West's Cal.Rptr. Adv. Pamp. No. 42 (Oct. 9, 1987) p. 21.) According to the comment, Civil Code sections 1567, 1568 and 1575, as well as *Moreno* v. *Cairns* (1942) 20 Cal.2d 531, 534-535 [127 P.2d 914], and *Keithley* v. *Civil Service Bd.* (1970) 11 Cal.App.3d 443, 449-452 [89 Cal.Rptr. 809], support this instruction. However, the Civil Code sections only stand for the rule that improperly induced consent will not create a binding contract, and the cases hold only that a resignation resulting from coercion, duress, or undue influence constitutes a discharge. These sections and cases do not deal with the issue presented here, whether constructive discharge *requires* employer intent. Therefore, they and BAJI No. 10.02 neither bind nor persuade us. Furthermore, the comment to BAJI No. 10.02 improperly relies on *Nolan* v. *Cleland* (9th Cir. 1982) 686 F.2d 806, which expressly excludes a requirement of employer intent. (*Id.,* at p. 14, fn. 17.)

[4] In this case we deal with a tortious constructive discharge as opposed to a constructive discharge in a breach of employment contract or bad faith context. (See *Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1163-1172 [226 Cal.Rptr. 820] [distinguishing between tortious, contractual, and bad faith wrongful discharge].) While the principles enunciated in this case may be applicable to the other two areas, we decide in this case only what facts and circumstances will constitute a constructive discharge in a tortious discharge context.

[5] See also, e.g.: *Watson* v. *Nationwide Insurance Co.* (9th Cir 1987) 823 F.2d 360, 361-362; *Calhoun* v. *Acme Cleveland Corp.* (1st Cir. 1986) 798 F.2d 559, 561-563; *Goss* v. *Exxon Office Systems Co.* (3d Cir. 1984) 747 F.2d 885, 887-889; *Bourque* v. *Powell Electrical Mfg. Co.* (5th Cir. 1980) 617 F.2d 61, 64-66; *Derr* v. *Gulf Oil Corp.* (10th Cir. 1986) 796 F.2d 340, 342-344; *Garner* v. *Wal-Mart Stores, Inc.* (11th Cir. 1987) 807 F.2d 1536, 1538-1539; *Civil Rights Division, etc.* v. *Vernick, etc.* (1982) 132 Ariz. 84 [643 P.2d 1054, 1055]; *Lewis* v. *Oregon Beauty Supply Co.* (1986) 77 Ore.App. 663 [714 P.2d 618, 620-622]; *Atlantic Richfield* v. *D. of Columbia Com'n* (D.C.App. 1986) 515 A.2d 1095, 1101; *DFEH* v. *Delmar Avionics* (1985) FEHC Dec. No. 85-19, pp. 23-24 [1984-85 CEB 13]; *DFEH* v. *La Victoria Tortilleria, Inc.*

Recent FEHC precedential decisions have required intent, but have held the intent is proved by the same evidence that established the aggravated conditions that would have caused a reasonable person in the employee's position to resign. (See FEHC decisions cited in fn. 5, *ante*.)

While the majority correctly take the position that requiring intent or actual knowledge is too stringent (see *Nolan*, 686 F.2d at p. 814, fn. 17), not requiring a third element of any kind relating to the employer's knowledge does not adequately insure that a peaceful, on-the-job resolution has been attempted or was futile.

(4) Accordingly, we hold that, to establish a tortious constructive discharge, an employee must show:

(1) the actions and conditions that caused the employee to resign were violative of public policy;

(2) these actions and conditions were so intolerable or aggravated at the time of the employee's resignation that a reasonable person in the employee's position would have resigned; and

(3) facts and circumstances showing that the employer had actual or constructive knowledge of the intolerable actions and conditions and of their impact on the employee and could have remedied the situation.

Applying this approach to the jury instruction before us, we conclude that the instruction given by the court imposed an unnecessarily heavy burden on the plaintiff. While the four required proofs listed in the first paragraph of that instruction would certainly establish a tortious constructive discharge, points 3 and 4 preclude consideration of facts and

(1985) FEHC Dec. No. 85-04, p. 16 [1984-85 CEB 13]; *DFEH* v. *Jack's Restaurant* (1984) FEHC Dec. No. 84-08, pp. 9-11 [1984-85 CEB 5]; and see: Finnegan, *Constructive Discharge Under Title VII and the ADEA* (1986) 53 U.Chi. L.Rev. 561 [discussing Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended by the Equal Employment Opportunity Act of 1972, 86 Stat. 103, 42 USC § 2000e et seq.]; Annot. (1981) 55 A.L.R. Fed. 418 [federal court and administrative cases on constructive discharge based on Title VII]. Requiring some employer intent, knowledge, or foreseeability that the employee would resign, see: *Bristow* v. *Daily Press, Inc.* (4th Cir. 1985) 770 F.2d 1251, 1254-1256; *Yates* v. AVCO Corp. (6th Cir. 1987) 819 F.2d 630, 636-637; *Johnson* v. *Bunny Bread Co.* (8th Cir. 1981) 646 F.2d 1250, 1256; *Sanders* v. *May Broadcasting Co.* (1983) 214 Neb. 755 [336 N.W.2d 92, 95-96]; *Beye* v. *Bureau of National Affairs* (1984) 59 Md.App. 642 [477 A.2d 1197, 1201-1204]; *First Judicial, etc.* v. *Iowa, etc.* (Iowa 1982) 315 N.W.2d 83, 87-89. The following federal circuits have not stated a clear position on the issue although they have been cited as supporting the majority view: *Martin* v. *Citibank, N. A.* (2d Cir. 1985) 762 F.2d 212, 221; *Bartman* v. *Allis-Chalmers Corp.* (7th Cir. 1986) 799 F.2d 311, 314-315; *Clark* v. *Marsh* (1981) 214 App.D.C. 350 [665 F.2d 1168, 1173-1176].

circumstances, other than notice to the employer, from which a jury could infer that the employer had actual or constructive knowledge of these conditions and their effect on the· employee. The second paragraph of the instruction requires intent by the employer to cause the employee's resignation, rather than the employer's constructive knowledge of the facts and circumstances surrounding the resignation.

### PREJUDICIAL NATURE OF ERRONEOUS INSTRUCTION

Elixir contends that whatever error the trial court made in instructing the jury was harmless. We disagree.

While recognizing that no precise formula could measure the effect of an incorrect instruction in all cases, the California Supreme Court in *LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946], set forth a number of factors to be considered in determining whether the error is reversible: "(1) the degree of conflict in the evidence on critical issues [citations]; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect [citation]; (3) whether the jury requested a rereading of the erroneous instruction [citation] or of related evidence [citation]; (4) the closeness of the jury's verdict [citation]; and (5) the effect of other instructions in remedying the error [citations]."

In this case counsels' arguments to the jury were not transcribed, the jury requested no rereading of related evidence and were provided with all of the instructions when they commenced their deliberations: However, we find the first, fourth and fifth factors listed in *LeMons* conclusive on the harmless error issue.

Respecting the fifth factor, no instructions lessening the improperly heavy burden imposed by the erroneous instruction were given. As to the fourth factor, the verdict in favor of Elixir was reached by nine of the twelve jurors. If the less burdensome instruction would have affected the thinking of just one of those jurors, defendant would not have prevailed. (Cf. *LeMons,* 21 Cal.3d at p. 877.)

Concerning the first factor listed in *LeMons,* the parties presented a great deal of conflicting evidence on the crucial issues in this case. As mentioned in the first section of this opinion, plaintiff presented significant evidence that Elixir discriminated against her because of her sex by paying her no more than or less than men who were arguably her subordinates during a

period of almost four years.[6] Plaintiff and several of her former superiors testified that she complained about her low compensation on three separate occasions in three of the four years. The first two times she complained her supervisors promised to raise her compensation to a level more in keeping with her responsibilities. Although she received annual increases, these increases merely kept her below or at the level of compensation paid to the men she claimed were her subordinates. When confronted with their failure to redress her grievance, her supervisors blamed other officers or the board of directors. Two of her superiors indicated she was being discriminated against because of her sex.

Plaintiff asserted as an additional cause of her resignation her treatment by a vice president who had become her new supervisor several months before her resignation. In a meeting which included subordinates, Brady testified that he told her he did not like the hours she kept and berated plaintiff's accounting clerk who was at the meeting, causing the clerk to cry. The vice president attacked the plaintiff's character, performance, and competency in a sarcastic manner. The vice president told her that at first some and then later all of her division responsibilities would be moved from Gardena, California, to Elixir's location in Elkhart, Indiana, despite the fact that Gardena was the corporate headquarters. On other occasions this vice president had overriden her decisions concerning the administration of her division and pay increases for her subordinates. When plaintiff complained to other management-level officers of Elixir, they refused to help plaintiff against her supervising vice president, although they did offer her positions within their areas of the company. A former president of Elixir testified that the vice president supervising her preferred men in managment positions, indicating his conduct toward plaintiff was motivated by her sex.

Elixir presented evidence conflicting with plaintiff's version of the facts. Current Elixir officials testified that the eventual moving of plaintiff's division from Gardena to Elkhart was for business related reasons and not intended to force plaintiff to resign. Their version of the meeting involving Brady and her managing vice president was low key and inoffensive. Elixir's evidence tended to show that the two men plaintiff alleged were her subordinates were not under her supervision and that their pay was based on their technical knowledge, their experience, and labor market factors rather than their sex.

---

[6] Elixir attempts to make much of the small amount by which one subordinate's salary exceeded Brady's ($14 per week) and of the discretionary bonuses given Brady which raised her total compensation slightly above her subordinate's. Elixir ignores the obvious inference of discrimination that paying a female supervisor little more than a male subordinate implies, and disregards the difference between a salary which can be counted on and a bonus which may not materialize.

In view of this conflicting evidence, plaintiff obviously would have benefited from not having to prove Elixir intended to cause her to resign. She had established that she had notified her supervisors of her feeling she was being discriminated against both in her wages and in her managing vice president's treatment of her, thereby presenting significant evidence of allegedly discriminatory and intolerable employer actions and employment conditions. Plaintiff's evidence concerning Elixir's subjective intent was thinner. The jury might well have decided that the continuing pattern of sexual discrimination was so intolerable that plaintiff had justifiably resigned, but found that Elixir had not actually intended her to resign.

Given the erroneously heavy burden imposed by the jury instructions, the nine-of-twelve-juror verdict, and the conflicting evidence on key issues, we decline, as did the Supreme Court in *LeMons,* to speculate upon the basis for the jury's general verdict and hold that the improper instruction constituted reversible error. (21 Cal.3d at p. 876.)

The judgment is reversed.

Hews, J., and McDaniel, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 24, 1988.