**ST. PAUL MERCURY INSURANCE COMPANY, a Minnesota corporation; St. Paul Fire and Marine Insurance Company, a Minnesota corporation, Plaintiffs,**

v.

**MEDICAL LABORATORY NETWORK, INC., a corporation; David L. Willis; Corazon Sarmiento, Defendants.**

No. CV 88–0539–RJK.

United States District Court, C.D. California.

Aug. 11, 1988.

Grace, Neumeyer & Otto, Inc., Richard A. Neumeyer, Los Angeles, Cal., for plaintiffs.

Brobeck, Phleger & Harrison, John J. Wasilczyk, Tina D. McKnight, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, Senior District Judge.

## BACKGROUND

This is an action for declaratory relief filed by St. Paul Insurance Co. and St. Paul Fire and Marine Insurance Co. ("St. Paul"). St. Paul seeks a determination that it has no duty to defend or indemnify its insureds, Medical Laboratory Network, Inc. ("Network") and its general manager, David Willis, against an underlying wrongful employment termination action filed by Corazon Sarmiento in state court.

The state court action filed by Sarmiento alleged causes of action for: (1) wrongful termination; (2) breach of the covenant of good faith and fair dealing; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (5) violation of state discrimination statutes. The record indicates, however, that Sarmiento was not actually fired, but resigned her position.

The insurance policy in question imposes a duty upon St. Paul to defend or indemnify Network for injuries to Sarmiento which result from "accidental" events.

## DISCUSSION

Before the Court is a motion for summary judgment brought by St. Paul. Summary judgment is appropriate where, as here, the pleadings, briefs and documentary evidence before the court demonstrate that no genuine issue of material fact remains in dispute and that the movant party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 202 (1986).

From the outset, there is some dispute among the parties as to the nature of the allegations in Sarmiento's complaint. St. Paul characterizes the complaint as simply alleging wrongful discharge of an employee. Network, on the other hand, insists that Sarmiento's employment termination claim, although inartfully drafted, is really one for "tortious constructive discharge" pursuant to *Brady v. Elixir Industries,* 196 Cal.App.3d 1299, 242 Cal.Rptr. 324 (1986).[1]

1. In *Brady,* the court recognized that an employee may be tortiously discharged without actually being terminated by an employer. There, plaintiff resigned after she was paid less than male employees over a four-year period. She alleged, *inter alia,* "tortious constructive dis-

Plaintiff admits that she was not discharged, but resigned from her position after being demoted. Thus, the complaint alleges constructive, as opposed to actual discharge, bringing the case within the ambit of *Brady*.

The insurance policy at issue provides that St. Paul will pay for damages for a covered bodily injury or property damage "resulting from an *accidental* event." An accidental event is defined as "any event that results in bodily injury or property damage that the protected person didn't expect or intend to happen." Having determined that Sarmiento's complaint alleges a cause of action for tortious constructive discharge, the question that the Court must resolve is whether, for the purposes of this insurance policy, a constructive discharge is an accidental or intentional occurrence.

■ In general, the duty to defend is broad and insurance policies must be interpreted so as to protect the reasonable expectations of the insured. *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 753, 161 Cal. Rptr. 322, 329 (1980). In fact, the duty to defend is so broad that as long as the complaint contains language creating the potential of liability under an insurance policy, the insurer must defend an action against its insured even though it has independent knowledge of facts not in the pleadings that establish that the claim is not covered. *Id.* Any doubts as to coverage should be resolved in favor of the insured. *Id.*

■ The insurer's obligation is not, of course, unlimited. It is limited first by the language of the insurance contract itself. Through the use of exclusions, the parties may specifically agree as to whether certain events are covered. In construing the language of an insurance policy, the court should give the words their plain and ordinary meaning, unless the policy clearly indicates to the contrary.

With regard to a constructive discharge, there is no evidence before the Court as to what the parties may have contemplated; indeed, the parties probably never contemplated whether coverage was provided for constructive discharge because the relevant policies were executed several months before *Brady, supra*, was decided.

There is, however, a limitation on St. Paul's liability found in the law of wrongful discharge. Numerous cases have held that the *actual* discharge of an employee cannot be an accidental event and that there is no coverage for such discharge where the policy contains an exclusion for intentional acts. *See Commercial Union Co. v. Superior Court*, 196 Cal.App.3d 1205, 242 Cal.Rptr. 454 (1987); *St. Paul Fire and Marine Insurance Co. v. Superior Court*, 161 Cal.App.3d 1199, 208 Cal. Rptr. 5 (1984). It has also been held that any emotional distress which resulted from the intentional discharge is, in effect, a derivative injury and must also be considered intentional. *Hartford Fire Ins. Co. v. Karavan Enterprises, Inc.*, 659 F.Supp. 1077, 1081 (N.D.Cal.1987). Whether this same reasoning would apply to a constructive discharge has not been addressed by the courts.

Network argues that constructive discharge is by definition an accidental event, and, unlike actual discharge, neither intended nor foreseen. Network contends that because it neither intended nor expected

charge" based upon sex discrimination. In reviewing the trial court's instruction to the jury on tortious constructive discharge, the court rejected a standard that would have premised liability upon a showing that the employer have intent or actual knowledge that the employee resign. Rather, the court held that such a discharge can be established by showing that:

(1) the actions and conditions that caused the employee to resign were violative of public policy;

(2) these actions and conditions were so intolerable or aggravated at the time of the employee's resignation that a reasonable person in the employee's position would have resigned; and

(3) facts and circumstances that the employer had actual or constructive knowledge of the intolerable actions and conditions and of their impact on the employee and could have remedied the situation.

*Brady*, 196 Cal.App.3d at 1306, 242 Cal.Rptr. at 328.

Sarmiento to resign, St. Paul has a duty to defend this action.

■ The Court does not agree. A reading of *Brady* shows the only logical conclusion to be that a constructive discharge is not an "accidental" event. *Brady, supra,* clarified what employees must *prove* to establish tortious constructive discharge. *Brady,* however, did not abandon the employer intent requirement. Rather, by requiring that the employer had "constructive knowledge of the intolerable actions and conditions and of their impact on the employee," the court presumed that the employer intended that the employee resign. *See also Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir.1982). The use of the term "constructive" in this context is also instructive:

> That which is established by the mind of the law in its act of *construing* facts, conduct, circumstances, or instruments. That which has not the character assigned to it in its own essential nature, but acquires such character in consequence of the way in which it is regarded by a rule or policy of law; hence, inferred, implied, or made out by legal interpretation.

*Black's Law Dictionary* (1979 Ed.) p. 283. (emphasis in original). The *Brady* court was obviously concerned with the difficult burden of proof faced by employees in trying to prove the state of mind of the employer. Likewise, recent Fair Employment and Housing Commission precedential decisions have required intent, but have held the intent is proved by the same evidence that established the aggravated conditions that would have caused a reasonable person in the employee's position to resign. *Brady, supra,* at 1306; *DFEH v. Delmar Avionics* (1985) FEHC Dec. No. 85–19, pp. 23–4; *DFEH v. La Victoria Tortilleria, Inc.* (1985) FEHC Dec. No. 85–04, p. 16;

*DFEH v. Jack's Restaurant* (1984) FEHC Dec. No. 84–08, pp. 9–11.

Thus, the Court finds, that for purposes of a constructive discharge, it will be presumed or inferred that the employer intended that the employee resign. Having stated a cause of action for constructive discharge, Sarmiento's resulting resignation cannot, as a matter of law, be "accidental" for purposes of St. Paul's duty to continue to defend Sarmiento's action against Network.[2]

This brings the court to the matter of costs. Prior to accepting the defense, St. Paul stated by letter that it was providing a defense under a complete reservation of rights to dispute coverage, and a right to withdraw further defense and to recover the cost of defense so provided.

■ An insurer who assumes the defense of the insured under a reservation of right is entitled to reimbursement of those expenses upon a determination that it had no duty to defend or indemnify the insured, provided the insured understands that such result will follow. *St. Paul Mercury Ins. Co. v. Ralee Engineering Co.,* 804 F.2d at 520, 522 (9th Cir.1986). Because the Court has found that St. Paul has no duty to defend the action, it is entitled to reimbursement of its costs.

Accordingly, IT IS HEREBY ORDERED that plaintiff St. Paul's motion for summary judgment, including recovery of costs, is GRANTED.

---

2. The Court's conclusion is not altered by plaintiff's claim for negligent infliction of emotional distress. That cause of action incorporates by reference all of the intentional acts in the complaint as the source of the alleged injury. This is not a case where mental distress is alleged to result from negligent supervision or the like.

Since the constructive discharge itself is "intentional" and based upon the same underlying acts, any mental distress resulting therefrom is "an integral part of the assertedly wrongful discharge" and would fall within the ambit of the discharge claim. *See Hartford Fire, supra,* at 1081.