**HYDRO SYSTEMS, INC., a California corporation, Plaintiff,**

v.

**CONTINENTAL INSURANCE COMPANY, a New Hampshire corporation, Defendants.**

**No. CV 88–6652–RJK (GHKx).**

United States District Court, C.D. California.

July 28, 1989.

Arthur Fine, Douglas W. Bordewieck, Mitchell, Silberberg & Knupp, Los Angeles, Cal., for plaintiff.

Jeffrey S. Barron, Michael T. Colliau, Morris, Polich & Purdy, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, Senior District Judge.

### BACKGROUND

This is a diversity action for breach of an insurance contract. Plaintiff, Hydro Systems ("Hydro"), manufactures fiberglass bathtubs. The process involves three raw materials: fiberglass, gel coat, and resin. Gel coat and resin are chemical compounds consisting, in part, of a hydrocarbon known as styrene. During the manufacturing process, gaseous styrene is liberated from the gel coat and resin and is emitted into the air. The styrene is dispersed into the air by means of exhaust fans and stacks. The manufacturing process takes place on Moreland Road in Simi Valley, California ("the Moreland Facility").

During the spring and summer of 1988, residents of a Simi Valley neighborhood known as the "Greek Tract" made complaints about the odors associated with the styrene emissions from the Moreland Facility. The complaints were made to Simi Valley officials and to the Ventura County Air Pollution Control District.

On April 15, 1988, the City of Simi Valley Community Services Department, Code Enforcement Division, notified Hydro that the complaints of odors and fumes emanating from the plant constituted a violation of the municipal code. The City threatened action to obtain compliance if Hydro did not act. In June and July, 1988, the City's planning commission held hearings to decide whether to suspend, modify, or revoke Hydro's operating permit. The commission rejected Hydro's initial proposal to raise the height of the exhaust stacks above its plant. On July 15, 1988, the planning commission issued an order immediately suspending Hydro's use of styrene and revoking its operating permit for ninety days.

Hydro appealed the planning commission action to the city council and instituted an action in state court. In July, 1988, certain Greek Tract residents intervened in the action. The intervenors filed a complaint in intervention contending that the styrene emissions from the Moreland Facility were causing them bodily injury and property damage. The intervenors, however, did not seek monetary damages for past or future losses, praying for denial of the relief requested by Hydro as well as seeking costs of suit and attorney's fees. In the state court action, Hydro obtained a TRO and preliminary injunction restraining enforcement of the commission's order pending Hydro's appeal to the city council.

On August 17, 1988, the city council denied Hydro's appeal but allowed Hydro to operate on a reduced schedule until October 25, 1988, while it attempted to ameliorate odors emitted from the facility. In response, Hydro installed a carbon absorption air pollution control system to absorb and neutralize the styrene vapors which otherwise would be emitted into the atmosphere.

Both parties contend that this action should be resolved on cross-motions for summary judgment. Continental argues that the pollution exclusion in the policy eliminates coverage. Continental also argues that Hydro's claims are not covered because the styrene emissions were not accidental and because they do not constitute sums Hydro was legally obligated to pay as damages. Hydro counters that Continental has waived its right to rely on certain policy exclusions by failing to properly investigate Hydro's claims and by failing to specify grounds for non-coverage in Continental's letter denying coverage. Hydro claims that Continental has breached its duties to indemnify and to defend Hydro, and that Continental has breached the implied covenant of good faith and fair dealing.

As discussed below, the pollution exclusion applies to Hydro's claims, and therefore Continental has not breached its duties. Because the pollution exclusion applies, the Court does not address Continental's other grounds for non-coverage.

## DISCUSSION

### I. *Pollution Exclusion*

■ Continental contends that Hydro's styrene emissions are excluded by the policy's pollution exclusion. The exclusion provides:

This insurance does not apply to:

(1) "bodily injury," "property damage" or injury or damage of any nature or kind to persons or property arising out of the actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of "pollutants";

(2) any loss, cost or expense incurred as a result of any "clean-up" of "pollutants"; or

(3) the investigation, settlement or defense of any claim, "suit" or proceeding against the insured, including any payments, costs or expenses associated therewith, alleging such injury, damage, loss cost or expense as described in (1) and (2) above.

The exclusion does not apply to the "products-completed operations hazard" with several provisos, which will be discussed more fully below.

Styrene, the chemical substance forming the basis of the residents' complaints and the City's order, is a pollutant as defined by the pollution exclusion. Gaseous styrene is defined as an "air contaminant" or "air pollutant" by Cal. Health & Safety Code sec. 39013. Hydro sets forth in its complaint that styrene is a hydrocarbon-based gas or vapor which is emitted into the ambient atmosphere by its manufacturing process. The relief sought by Hydro falls within the exclusion.

Hydro contends that the exclusion does not apply because the styrene emissions fall within the "products-completed operations hazard" exception to the exclusion. The policy defines "products-completed operations hazard" to include "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work'...." "Your product" is defined as any "goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by you."

Hydro claims that styrene should be considered a product under this section because styrene is generated by Hydro's work and disposed of by Hydro through its stacks. However, Hydro ignores the provisos to the products-completed hazards exception. This exception applies to the pollution exclusion provided that:

(1) the emission ...

   (a) does not occur at or from any site or location used ... for the handling, storage, disposal ... of "waste";

(2) "your work" does not ... involve any "clean-up" of pollutants ...

(4) any loss, cost or expense incurred as a result of any "clean-up" of "pollutants" is not the result of a governmental directive or request,....

Therefore, if styrene were to be considered a "product" by Hydro, it would not be covered under the policy because the emission occurred from the disposal of waste. Moreover, any damages claimed from the

installation of the carbon absorption system were clearly the result of a "governmental directive or request."

In addition, styrene does not appear to be a "product" as envisioned by the policy. The styrene dispersed through the manufacturing process does not appear to be a "good or product." The styrene produced in the manufacturing process is not sold or marketed. Allowing such an emission to be considered a product would completely swallow the pollution exclusion.

■ Hydro also argues that Continental waived its rights to rely on the pollution exclusion because its denial letter inadequately assessed Hydro's operations and applied the pollution exclusion. However, the cases cited by Hydro stand only for the proposition that "an insurance company which relies on specified grounds for denying a claim thereby waives the right to rely in subsequent litigation on any other grounds which a reasonable investigation would have uncovered." *McLaughlin v. Connecticut General Life Ins.*, 565 F.Supp. 434, 452 (N.D.Cal.1983). The insurance company "has a duty of condor to explain or at least make reference to the bases for denial of policy coverage." *Intel Corp. v. Hartford Accident & Indemnity Co.*, 692 F.Supp. 1171, 1178 (N.D.Cal.1988).

Here, as admitted by Hydro, Continental's denial letter asserted that Hydro's claim was barred by the pollution exclusion. This is all that was necessary under *Intel* and *McLaughlin*. Those cases do not stand for the contention made by Hydro that the insurer was required to make a full investigation of Hydro's claims before identifying a ground for non-coverage. Because the pollution exclusion applies to Hydro's claims and was an adequate ground for non-coverage, Continental did not breach its duty to indemnify Hydro.

## II. *Duty to Defend*

■ Hydro contends that Continental breached its duty to defend. Hydro seeks its costs in defending enforcement proceedings before the city council and the planning commission and its costs in instituting the suit in state court to enjoin the commis-

sion's order. Hydro points out that under California law, the insurer's duty to defend is broader than its duty to indemnify. *See Cal–Farm Ins. Co. v. TAC Exterminators*, 172 Cal.App.3d 564, 580–81, 218 Cal.Rptr. 407, 415–16 (1985). "In general, the duty to defend is broad and insurance policies must be interpreted so as to protect the reasonable expectations of the insured." *St. Paul Mercury Ins. v. Medical Lab. Network*, 690 F.Supp. 901, 903 (C.D.Cal. 1988). However, the insurer's obligation "is limited by the language of the insurance contract itself. In construing the language of an insurance policy, the court should give the words their plain and ordinary meaning." *Id.* The court may not "rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not paid." *See Allstate Ins. Co. v. Gilbert*, 852 F.2d 449, 453–54 (9th Cir.1988) (quoting *Safeco Ins. Co. v. Gilstrap*, 141 Cal.App.3d 524, 553, 190 Cal. Rptr. 425, 431 (1983)). Where there is no potential of liability under a policy exclusion, there is no duty to defend. *Id.* Here, since Hydro's claims were excluded by the pollution exclusion, Continental had no duty to defend.

## III. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

■ Hydro contends that Continental breached the implied covenant of good faith and fair dealing by (1) Continental's failure to conduct an investigation of Hydro's claim beyond a review of materials submitted by Hydro; (2) Continental's assertion that "one can conclude from the claim as presented that the alledged [sic] damage was expected from the standpoint of the insured"; (3) Continental's claim that the coverage was barred by the pollution exclusion; and (4) the failure of Warner Jones, Continental's claim analyst, to take action when these points were brought to his attention.

However, as discussed above, Continental's handling of the claim appears proper. The pollution exclusion clearly applied to Hydro's claims. The fact that the pollution exclusion applied to Hydro's claims pre-

cludes Hydro's bad faith claim. *See Healy Tibbitts Construction Co. v. Insurance Co. of North America,* 679 F.2d 803, 804–05 (9th Cir.1982) (affirming summary judgment in favor of insurer on issue of bad faith where claim was excluded from coverage).

## CONCLUSION

There being no genuine issue as to any material fact and the defendant being entitled as a matter of law to prevail, defendant Continental's Motion for Summary Judgment is hereby GRANTED. Plaintiff Hydro's Motion for Summary Judgment is hereby DENIED.

The Clerk shall send, by United States mail, a copy of this Memorandum of Decision and Order to counsel for the parties.