229 Cal.App.3d 1560 (1991)
281 Cal. Rptr. 375
UNITED PACIFIC INSURANCE COMPANY, Plaintiff and Respondent,
v.
McGUIRE COMPANY et al., Defendants and Appellants.
Docket No. A05445.
Court of Appeals of California, First District, Division One.
May 22, 1991.
*1561 COUNSEL
Cooley, Godward, Castro, Huddleson & Tatum, Paul A. Renne, James A. Richman and John W. Crittenden for Defendants and Appellants.
*1562 Low, Ball & Lynch, Raymond Coates and Geneva Wong Ebisu for Plaintiff and Respondent.
McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner and James H. Wilkins as Amici Curiae on behalf of Plaintiff and Respondent.
OPINION
NEWSOM, Acting P.J.
The McGuire Company and five owners and employees of the company (hereafter insureds) appeal from a declaratory judgment in favor of United Pacific Insurance Company (hereafter Pacific Insurance) exonerating it from the duty to defend the insureds against a wrongful termination action.
The McGuire Company was a family-owned corporation located in San Francisco engaged in the business of distributing and manufacturing furniture. In April 1978, the company hired Dale Burgess as a senior executive under an agreement giving him certain stock ownership rights. After Burgess had worked for the company seven years, the principal stockholders, John and Elinor McGuire, decided to discharge him. At a meeting on June 27, 1986, attended by their legal counsel, they informed Burgess of their decision. The McGuires subsequently sold the company on November 13, 1986, to another company in the furniture business. Burgess filed an action for wrongful termination the next month in San Francisco Superior Court.
Burgess's second amended complaint alleged nine causes of action: wrongful termination, breach of contract, interference with prospective economic advantage, breach of fiduciary duty, fraud and deceit, constructive trust, and three distinct theories of breach of the covenant of good faith and fair dealing relating to his employment agreement. The first cause of action for wrongful termination alleged that Burgess "suffered mental upset, distress and aggravation." This allegation was incorporated by reference in all the subsequent causes of action except those for breach of contract and constructive trust. The complaint prayed for a variety of remedies to compensate Burgess for his wrongful termination and to award him the share in the profits from the sale of the business to which he was entitled by his stock ownership rights. Most pertinent to this appeal, the prayer included a demand for "[g]eneral damages for mental and emotional distress...."
Pacific Insurance accepted the defense of the Burgess action subject to a reservation of rights but filed a complaint for declaratory judgment in the Superior Court of San Francisco seeking a declaration that it had no obligation to indemnify the insureds or any "further obligation to provide a defense" in the Burgess action. Subsequently, it filed a motion for summary *1563 judgment which the court granted after a hearing on December 21, 1988. A judgment decreeing that Pacific Insurance had "no duty to defend or indemnify" the insureds was filed on April 3, 1989.
At the time of Burgess's dismissal, Pacific Insurance had issued to the insureds a comprehensive general liability insurance policy containing standard provisions employed throughout the industry in such policies plus a "Special Form Comprehensive General Liability Endorsement" with more extended coverage. The standard promise to indemnify stated: "The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [¶] Coverage A. bodily injury or [¶] Coverage B. property damage [¶] to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent...." As in other policies of this kind,[1] the term "occurrence" was defined as follows: "occurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured...."
The "Special Form Comprehensive General Liability Endorsement," which the insureds purchased for an increased premium, modified the insurance provided by the standard policy. Part XIV of the endorsement contains the following "Extended Definition of Occurrence": "`Occurrence' means an accident, an event or a continuous or repeated exposure to conditions which results, during the policy period, in bodily injury or property damage neither expected nor intended by the insured."
As the case was argued before Aim Insurance Co. v. Calcasi, ante, page 209 [280 Cal. Rptr. 766], Pacific Insurance did not question California authority appearing to indicate that the coverage for "bodily injury" embraces emotional distress. (Dyer v. Northbrook Property & Casualty Ins. Co. (1989) 210 Cal. App.3d 1540, 1546 [259 Cal. Rptr. 298]; Abellon v. Hartford Ins. Co. (1985) 167 Cal. App.3d 21, 26-30 [212 Cal. Rptr. 852]; Employers Cas. Ins. Co. v. Foust (1972) 29 Cal. App.3d 382 [105 Cal. Rptr. 505].) As it was not properly raised in this appeal, we express no opinion on this issue. The issue of coverage raised by the parties turns rather on the definition of occurrence.
The standard definition of occurrence at issue here has received much attention in California case law. Nine cases have considered identical (Dyer *1564 v. Northbrook Property & Casualty Ins. Co., supra, 210 Cal. App.3d 1540; Commercial Union Ins. Co. v. Superior Court (1987) 196 Cal. App.3d 1205 [242 Cal. Rptr. 454]; Royal Globe Ins. Co. v. Whitaker (1986) 181 Cal. App.3d 532 [226 Cal. Rptr. 435]; Economy Lumber Co. v. Insurance Co. of North America (1984) 157 Cal. App.3d 641 [204 Cal. Rptr. 135]; Giddings v. Industrial Indemnity Co. (1980) 112 Cal. App.3d 213 [169 Cal. Rptr. 278]; Hartford Fire Ins. Co. v. Karavan Ent., Inc. (N.D.Cal. 1986) 659 F. Supp. 1075) or similar provisions (St. Paul Fire & Marine Ins. Co. v. Superior Court (1984) 161 Cal. App.3d 1199 [208 Cal. Rptr. 5]; St. Paul Mercury Ins. Co. v. Ralee Engineering Co. (9th Cir.1986) 804 F.2d 520; St. Paul Mercury Ins. v. Medical Lab. Network (C.D.Cal. 1988) 690 F. Supp. 901). Of these cases, six have concerned the insurance company's duty to defend an employee's wrongful termination suit. (Dyer v. Northbrook Property & Casualty Ins. Co., supra, 210 Cal. App.3d 1540; Commercial Union Ins. Co. v. Superior Court, supra, 196 Cal. App.3d 1205; St. Paul Fire & Marine Ins. Co. v. Superior Court, supra, 161 Cal. App.3d 1199; St. Paul Mercury Ins. Co. v. Ralee Engineering Co., supra, 804 F.2d 520; St. Paul Mercury Ins. v. Medical Lab. Network, supra, 690 F. Supp. 901; Hartford Fire Ins. Co. v. Karavan Ent., Inc., supra, 659 F. Supp. 1075.) All the decisions have held that the insurer has no duty to defend. None of the decisions, however, concerned the extended definition of occurrence appearing here in the "Special Form Comprehensive General Liability Endorsement."
In denying coverage, the cases have relied, more or less explicitly, on an interpretation of the word "accident" in the definition of occurrence or the term "accidental event" appearing in certain similar policies. They have interpreted these terms as excluding coverage for "intentional" conduct. Since an employer necessarily acts in an intentional manner in discharging an employee, the cases have held a wrongful termination action to be based on intentional conduct outside the insurance coverage. A few cases have added that, since the terms define the scope of coverage, the insured bears the burden of proving that a claim is within their intended meaning. (Dyer v. Northbrook Property & Casualty Ins. Co., supra, 210 Cal. App.3d 1540, 1547; Royal Globe Ins. Co. v. Whitaker, supra, 181 Cal. App.3d 532, 537; see also Giddings v. Industrial Indemnity Co., supra, 112 Cal. App.3d 213, 218.) In no case has the analysis relied on the phrase "neither expected nor intended from the standpoint of the insured" appearing at the end of the standard definition of occurrence. Where the decisions have mentioned this language, they appear to treat it as language affirming the significance of the term "accident," rather than as an independent limitation on coverage.
In a typical analysis displaying these features, the court in Dyer v. Northbrook Property & Casualty Ins. Co., supra, 210 Cal. App.3d 1540, 1547, stated: "An intentional act is not an `accident.' [Citation.] More to the *1565 point, `[a]n intentional termination is not an "occurrence" under the policy because it is not an accident.' (Commercial Union Ins. Co. v. Superior Court (1987) 196 Cal. App.3d 1205, 1209....) [¶] As did the Commercial Union opinion, we note the holding of St. Paul Fire & Marine Ins. Co. v. Superior Court (1984) 161 Cal. App.3d 1199.... Because the policy expressly covered only claims against the insured `resulting from an accidental event,' which `must be something [the insured] didn't expect or intend to happen,' and the termination was not an unintentional, unexpected, chance occurrence, St. Paul held that the insurer had no potential liability under the policy and owed no obligation to defend the insured."
(1a) Despite the abundance of precedent in the area, the case at bar presents novel issues concerning the significance of the term "event" in the extended definition of occurrence and the phrase "not expected or intended" appearing at the end of the definition of occurrence in both the standard definition and the extended definition.
As noted above, the extended definition defines occurrence to mean "an accident, an event or a continuous or repeated exposure to conditions...." (Italics added.) The context does not suggest that the term "event" is synonymous with "accident"  and therefore simply redundant  since it appears in a definition purporting to provide additional coverage. (See Insurance Co. of North America v. Sam Harris Constr. Co. (1978) 22 Cal.3d 409, 412 [149 Cal. Rptr. 292, 583 P.2d 1335].) The dictionary definition of the word is very broad. For example, Webster's New International Dictionary of the English Language Unabridged (2d ed. 1939) at page 885 lists as synonyms occurrence, incident, consequence and result. We have not discovered any narrower meaning in legal usage. (See Rinehart v. F.M. Stamper Co. (1932) 227 Mo. App. 653 [55 S.W.2d 729, 732]; Geis v. Geis (1933) 1125 Neb. 394 [250 N.W. 252, 253].) The word has no connotation of fortuity; under any accepted usage, it obviously embraces intentional conduct.
Since the word "event" is not limited to fortuitous happenings, the phrase "not expected or intended" cannot be read as language confirming the meaning of the term; in the context of the extended definition, the phrase must be regarded as language of limitation, narrowing the coverage otherwise provided by the word "event." As a provision limiting coverage, the phrase performs precisely the same function as the common exclusion for intentional conduct. It does not matter that the phrase appears in the "definitions" section of the policy rather than the "exclusions" section; in either case it performs the function of an exclusion. (2), (1b) Consequently, as it appears in the extended definition of occurrence in the special form endorsement, the phrase is subject to the "well settled principle that such exclusionary clauses should be interpreted as narrowly as possible." *1566 (Congregation of Rodef Shalom v. American Motorists Ins. Co. (1979) 91 Cal. App.3d 690, 697 [154 Cal. Rptr. 348].)
Pacific Insurance argues that the phrase "neither expected nor intended by the insured" serves as "a limitation and qualification of the term `event.'" Under this interpretation, coverage extends only to events that are neither expected nor intended. The interpretation, however, is subject to two objections. First, it would make the word "event" synonymous, or nearly synonymous, with the word "accident." Since the word appears in a special endorsement purporting to extend coverage, it would be inconsistent with the stated purpose of the endorsement to give it a meaning that does not in fact extend the scope of coverage in any clear manner. Secondly, the immediate antecedent of the phrase is not the word "event" but the word "damage." Under grammatically correct usage, the phrase will modify the word damage.
The insureds maintain that the phrase does in fact modify the word "damage," excluding from coverage those elements of damage that are expected or intended by the insured. (3), (1c) Insurance Code section 533, which prohibits insurance coverage for willful conduct, provides a somewhat parallel exclusion.[2] The word "event" remains unqualified, extending coverage to intentional acts such as those involved in a wrongful termination action. In short, under the insured's interpretation, the definition of occurrence provides coverage for intentional actions (subject to the statutory limitations of Ins. Code, § 533) that result in bodily injury but excludes coverage for those elements of damages that were expected or intended by the insured.
The insureds' interpretation comports best with the grammatical structure of the definition of occurrence and gives substance to the extended coverage in the special endorsement. It is not inconsistent with precedents holding that intentional conduct lies outside the definition of occurrence. As we have noted, these precedents are based on an interpretation of the word "accident"; the insureds' interpretation rests on the additional word "event" inserted in the extended definition. Contrary to the protests of Pacific Insurance, we do not think the insureds' interpretation would open the insurance industry to "unbridled coverage." It would extend coverage *1567 under the special endorsement to an area of liability for bodily injury that, while lying outside standard coverage, is still circumscribed by the statutory limitations of Insurance Code section 533 and the presumably broader limitations of the phrase excluding coverage for damages that are expected or intended.
(4) An insurer "must defend a suit which potentially seeks damages within the coverage of the policy...." (Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 275 [54 Cal. Rptr. 104, 419 P.2d 168]; St. Paul Fire & Marine Ins. Co. v. Superior Court, supra, 161 Cal. App.3d 1199, 1202.) "If there is a doubt as to whether the insurer must defend, the doubt should be resolved in the insured's favor." (Miller v. Elite Ins. Co. (1980) 100 Cal. App.3d 739, 753 [161 Cal. Rptr. 322].) (1d) The likelihood that Burgess could successfully recover damages for mental distress in his wrongful termination suit was greatly reduced by the Supreme Court's decision in Foley v. Interactive Data Corp. (1988) 47 Cal.3d 654 [254 Cal. Rptr. 211, 765 P.2d 373], but the record on appeal contains nothing that bears decisively on this issue. We cannot say that Burgess's claim of damages for mental distress is so clearly precluded that there is no potential for liability. Accordingly, we hold that Pacific Insurance has a duty to defend the insureds in the action.
Having held that a potential for liability exists under the extended definition of occurrence, we do not reach the other issues of coverage raised by the insureds.
The judgment is reversed. Costs to appellants.
Stein, J., and Dossee, J., concurred.
A petition for a rehearing was denied June 21, 1991, and respondent's petition for review by the Supreme Court was denied August 23, 1991. Panelli, J., was of the opinion that the petition should be granted.
NOTES
[1] For background on the evolution and current use of this provision in the insurance industry, see 3 California Insurance Law and Practice (1990 rev.) section 41.30[7], pages 41-64.
[2] Insurance Code section 533 exonerates insurers from liability only for those intentional acts that are "done with a `preconceived design to inflict injury.'" (Clemmer v. Hartford Insurance Co. (1978) 22 Cal.3d 865, 887 [151 Cal. Rptr. 285, 587 P.2d 1098]; Fire Ins. Exchange v. Abbott (1988) 204 Cal. App.3d 1012, 1019-1021 [251 Cal. Rptr. 620].) As the phrase "neither expected nor intended by the insured" may provide a broader exclusion than Insurance Code section 533, the decisions interpreting that statute have an uncertain relevance here. (But see Mullen v. Glens Falls Ins. Co. (1977) 73 Cal. App.3d 163 [140 Cal. Rptr. 605]; United States Fid. & Guar. Co. v. American Employer's Ins. Co. (1984) 159 Cal. App.3d 277 [205 Cal. Rptr. 460].)