*63 ORDER
TODD R. MATHA, Chief Judge.
INTRODUCTION
The Court must determine whether to remand the instant case to the Grievance Review Board (hereinafter GRB) with instructions. The Court declines to do so since the plaintiff has demonstrated an inability to satisfy the minimum require- *64 merits for tortious constructive discharge. The analysis of the Court follows below.
PROCEDURAL HISTORY
The petitioner, Kristin K. White Eagle, by and through Attorney Mark L. Goodman, filed her Petition for Administrative Review (hereinafter Petition) on May 8, 2008. See Employment Relations Act of 2004 (hereinafter ERA), 6 HCC § 5.85c; see also Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.), Rule 63(A)(1)(a). On May 8, 2008, the Court entered the Scheduling Order, setting forth the timelines and procedures to which the parties should adhere during the pendency of the appeal. In response, the petitioner submitted the administrative record on May 22, 2008. See HCN R. Civ. P. 63(D).
The petitioner next filed a timely Initial Brief & Motion for Evidentiary Hearing on June 5, 2008. See ERA, § 5.35e; HCN R. Civ. P. 63(D)(1). The respondent filed a timely Response Brief on July 7, 2008. See. HCN R. Civ. P. 63(E). The petitioner reiterated her earlier request on July 11, 2008, with the filing of the Motion far Evidentiary Hearing. The Court accordingly issued Notice(s) of Hearing on July 25, 2008, informing the parties of the date, time and location of a Status Hearing. The Court convened the Hearing on August 26, 2008 at 2:00 p.m. CDT.[1] The following parties appeared at the Status Hearing: Attorney Mark L. Goodman, petitioner’s counsel, and Ho-Chunk Nation Department of Justice Attorney Alysia E. LaCounte, respondent’s counsel.
On October 27, 2008, the respondent submitted a compact disc recording of the April 9, 2008 GRB hearing. The petitioner subsequently filed her Initial Brief & Appendix (hereinafter Initial Brief II) on Dec. 4, 2008. See supra note 1. The respondent requested an extension to file its responsive pleading on January 5, 2009, with which the petitioner noted her assent. The Court consequently granted the request within its January 5, 2009 Order to Extend Time to Respond to Petitioner’s Initial Brief The respondent filed a timely Response Brief (hereinafter Response Brief II) on January 12, 2009, followed by petitioner’s timely Reply Brief on January 22, 2009. See HCN R. Civ. P. 63(E). Neither party requested the ability to present oral argument, prompting the Court to determine the matter on the documentary materials. Id., Rule 63(G); Scheduling Order at 3.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art. VI—Executive
Sec. 1. Composit ion of the Executive.
(b) The Executive Branch shall be composed of any administrative Departments created by the Legislature, including a Department of the Treasury, Justice, Administration, Housing. Business, Health and Social Services, Education, Labor, and Personnel, and other Departments deemed *65 necessary by the Legislature. Each Department shall include an Executive Director, a Board of Directors, and necessary employees. The Executive Director of the Department of Justice shall be called the Attorney General of the Ho-Chunk Nation. The Executive Director of the Department of Treasury shall be called the Treasurer of the Ho-Chunk Nation.
Art. X—Bill of Rights
Sec. 1. Bill of Rights.
(a) The Ho-Chunk Nation, in exercising its powers of self-government, shall not:
(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;
EMPLOYMENT RELATIONS ACT OF 2004, 6 HCC § 5
Ch. 1—General Provisions
Subsec. 3. Declaration of Policy.
a. This Employment Relations Act is the official employment law of the Ho-Chunk Nation. It supersedes the Nation’s Personnel Policies and Procedures Manual and all policies, rules, and regulations enacted by Legislative resolutions pertaining to the employment law of the Nation.
Subsec. 5. Employment Clause.
a. Equal Employment Opportunity. With the exception of Ho-Chunk Preference in Employment as set forth in paragraph (b), below, it will be a violation of this Act to discriminate based on an individual’s sex, race, religion, national origin, pregnancy, age, marital status, sexual orientation, or disability.
Subsec. 6. Employee Rights.
d. Harassment.
(1) Harassment (both overt and subtle) is a form of employee misconduct that both demeans another person and undermines the integrity of the employment relationship by creating an unreasonably intimidating, hostile, and objectively offensive working environment.
e. Sexual Harassment.
(1) Purpose. The purpose of the Ho-Chunk Nation sexual harassment policy is to:
(a) Prohibit sexual harassment in the workplace.
(2) Policy. Sexual harassment by or of supervisors, employees, or non-employees is strictly prohibited and will be investigated for possible disciplinary action.
(e) An employee who believes that he or she has been subjected to unwelcome sexual conduct or that there exists an objectively hostile work environment has a duty to report the situation. Such report shall be made directly to the Department of Personnel.
Ch. II—Definitions
Subsec. 7. Definitions. Whenever the following terms are used in this Act, they shall have the meanings indicated.
o. Employee. Any individual employed by the Ho-Chunk Nation, regardless of the source of funds by which the employee is paid. The term “employee” shall include any person elected or appointed. The Nation further classifies its employees as follows:
(1) At—Will Employee. An employee who is subject to termination with or without cause or notice. The employee also has the right to leave at any time for any or no reason or notice. At-will employees include Executive Managers of the Nation’s Gaming Facilities and Managers of the non-gaming revenue generating facilities. The At-Will Employee classification will be stated on the employee’s job description.
*66 ss. Separation.
(2) Resignation. Voluntary separation from employment in either “good standing” or “not in good standing.”
(3) Termination. Involuntary separation from employment not in good standing.
Ch. Ill—Employment Policies
Subsec. 10. Employee Separation Policy.
b. Resignation. An employee voluntarily wishing to leave employment with the Ho-Chunk Nation in good standing must file a written resignation with the immediate supervisor at least two (2) weeks prior to the effective date, stating specific reason(s) for the resignation. The employee’s resignation shall be promptly forwarded through the Executive Director to the Department of Personnel.
Subsec. 14. Performance Evaluations.
a. The Executive Director, Department of Personnel shall promulgate the process and procedures for Performance Evaluations to ensure regular reports are made as to the competence, efficiency, adaptation, conduct, merit, and other job related performance conditions of the Nation’s employees.
b. Annual Performance Evaluation.
(1) Supervisors shall be responsible for the completion of an annual evaluation up to ten (10) days prior to the employee’s Annual Review Date.
(2) An employee who has not received an annual evaluation within thirty (30) days after his or her scheduled Annual Review Date may be eligible to receive a merit pay increase in a range of 0% to 4%, not to surpass the maximum rate of his or her pay range, if the following criteria have been met:
(a)The employee has had no disciplinary action placed in his or her personnel file since the previous evaluation date.
(b) The employee’s previous evaluation met the criteria for a merit increase. If the employee has not received an evaluation since working with the Nation, assuming the employment has been continuous, it will automatically be assumed that the employee has met the evaluation criteria to receive a merit increase.
(c) The employee is not currently on a temporary reassignment, any type of leave of absence, layoff or other event that would affect the employee’s Annual Review Date.
(d) The Nation has not imposed any temporary across-the-board payroll restrictions that would suspend merit increases for all employees.
(3)If the above criteria are met, the necessary documentation will be generated, signed and processed by the Department of Personnel granting the employee a pay increase effective the date that the employee’s Annual Review Date was due.
Ch. V—Work Rules & Employee Conduct, Discipline, & Administrative Review
Subsec. 30. Employee Conduct.
e. Unacceptable Conduct. The following employee acts, activities, or behavior that are unacceptable conduct.
(20) Employees may not engage in coercion, nor be subject to coercive tactics that constitute a deprivation of legally protected rights.
Subsec. 33. Grievances.
a. Employees may seek administrative and judicial review only for alleged discrimination and harassment.
*67 Subsec. 34. Administrative Review Process.
a. Policy.
(1) The Department of Personnel will take all reasonable steps to investigate any incident, which has resulted in disciplinary action. It is the policy of the Ho-Chunk Nation to afford all eligible employees who have been subject to suspension or termination a means of having the circumstances of such disciplinary action reviewed by an impartial and objective Grievance Review Board (Board).
(2) Employees are entitled to grieve suspensions or terminations to the Board The Board will be selected from a set pool of employees and supervisors with grievance training, who will review[7] a case and determine whether to uphold the discipline.
(3) Following a Board decision, the employee shall have the right to file an appeal with the Ho-Chunk Nation Trial Court (Court).
Subsec. 35. Judicial Review.
c. Judicial review of a grievance involving suspension, termination, discrimination or harassment may proceed to the Ho-Chunk Nation Trial Court only after the Administrative Review[7] Process has been exhausted through the Grievance Review Board. An employee may appeal a Board decision to the Trial Court within thirty (30) calendar days of when the Board decision is served by mail.
e. Under this limited wraiver of sovereign immunity, the Court shall review the Board’s decision based upon the record before the Board. Parties may request an opportunity to supplemenat the record in the Trial Court, either with evidence or statements of their position The Trial Court shall not exercise de novo review of Board decisions. The Trial Court may only set aside or modify a Board decision if it was arbitrary or capricious.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motim to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity that prevented a party from receiving a fan* trial or a substantial legal error that affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this Rule, the time for initiating appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating the appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(C) Motion to Modify. After the time period in which to file a Motion to Amend of a Motion for Reconsideration has elapsed, a party may file a Motion to *68 Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences upon entry of the modified judgment. If the Court denies a motion filed under this Rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Re-issuance of Judgment. Clerical errors in a Court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; (2) fraud, misrepresentation or serious misconduct of another party to the action; (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(l)(a)(i) or (ii), did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effeet due to a judgment earlier in time.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the Rules of Appellate Procedure.
Rule 63. Judicial Review of Administrative Adjudication.
(A) Any person aggrieved by a final agency decision may request that the Ho-Chunk Nation Trial Court review such decision by filing a Petition for Administrative Review with the Court within thirty (30) calendar days of sueh decision, unless otherwise provided.
1. The following laws provide for filing within thirty (30) days:
a. Employment Relations Act of 2004
(D) The commission or board, designated as the respondent, must transmit the administrative record to the Court within fifteen (15) days after receipt of the Peti-tim for Administrative Review. The administrative record shall constitute the sole evidentiary record for judicial review of the agency decision, unless the petitioner avails him or herself of the following exception:
1. The petitioner may request an opportunity to supplement the evidentiary record within an Employee Grievance Review Board appeal, provided that the petitioner demonstrates that the Board:
a. excluded relevant evidence as defined by the Federal Rules of Evidence, Rule 401; or
b. failed to consider evidence that could not reasonably have been discovered prior to the Employee Grievance Review Board hearing.
(E) Within thirty (30) calendar days of filing the Petition for Administrative Re *69 view, the petitioner shall file a written brief, an initial Brief, unless the petitioner has sought an evidentiary modification pursuant to HCN R. Civ. P. 63(D)(l)(a-b). The respondent shall have thirty (30) calendar days after filing of the brief in which to file a Response Brief. After filing of respondent’s Response Brief the petitioner may file the Reply Brief within ten (10) calendar days.
(F) The administrative record shall consist of all evidence presented to the agency, including but not limited to:
2. a transcript of the proceedings, which may be in digital or other electronically recorded format, sufficiently clear so that the Court may determine what transpired in the proceedings,
(G) At the discretion of the Court, the Court may require an oral argument. The Court shall decide the order of the presentation, the length of time each party is permitted for their presentation, the issues to be addressed in oral argument, and such other matters as may be necessary. An order entitled, Notice of Oral Argument, shall include all such matters and shall be served on all parties at least ten (10) calendar days prior to the date set for argument,
FINDINGS OF FACT[2]
1. The petitioner, Kristen K. White Eagle, is an enrolled member of the Ho-Chunk Nation. Tribal ID# 439A002983, and maintains an address of S3062 Fox Hill Road, Baraboo, WI 53913 Pet. at 1. The petitioner was employed as Executive Manager at Ho-Chunk Casino, Hotel & Convention Center, a division within the Ho-Chunk Nation Department of Business (hereinafter Business Department), located at S3214 Highway 12, Baraboo, WI 53913. Id.; see also Dep’t of Bus. Establishment & Org. Act of 2001, 1 HCC § 3.5c. The Business Department is an executive department with principal offices located on trust lands at Ho-Chunk Nation Headquarters, W9814 Airport Road, P.O. Box 667, Black River Falls, WI. See Constitution of the Ho-Chunk Nation (hereinafter Constitution), Art. VI, § 1(b). The Ho-Chunk Nation (hereinafter HCN or Nation) is a federally recognized Indian tribe. See 73 Fed.Reg. 18533 (Apr 4, 2008).
2. The respondent, GRB, is a statutorily established entity for the purpose of hearing certain employment grievances, and is primarily comprised of randomly selected members who receive training facilitated by the HCN Department of Personnel (hereinafter Personnel Department) ERA, § 5,34a(l~2); see also Janet Funmaker v. Libby Fairchild, in her capacity as Executive Dir. of HCN Dep’t of Pers., et al., SU 07-05 (HCN S.Ct., Aug. 31, 2007) at 4 (clarifying that the GRB is “an agency within the Department of Personnel”).
3. The petitioner occupied an at-will employment position as Executive Manager. Reply Br. at 2; Resp. Br. Ii at 3; see also ERA, § 5.7o(l).
*70 4. On February 5, 2008, the petitioner resigned her position at the request of her immediate supervisor, Joseph E. Decorah, Executive Director of the Business Department. Resp. Br: II at 1; Initial Br. II at 2.
5. Executive Director Decorah purportedly instructed the petitioner to resign in order, in part, to maintain her good standing. Reply Br. at 2;[3] Resp. Br. II at 3-4; see also ERA, § 5.7ss(2).
6. The petitioner references “numerous policy violations lurking in this case,” which render her capable of making “a prima facie defense of constructive discharge.” Reply Br. at 6. The petitioner specifically cites to four (4) statutory provisions. Id. at 5; Initial Br. II at 5 (citing ERA, § 5.6d(l), 10b, 14a-b, 30e(20)).
7. The administrative hearing concerning the alleged wrongful termination occurred on April 9, 2008.[4]
DECISION
In 2001, the Court adopted a test for tortious constructive discharge. If a plaintiff asserted such a defense, the Court would require that he or she adequately demonstrate:
(1) the actions and conditions that caused the employee to resign were vio-lative of [fundamental] public policy;
(2) these actions and conditions were so intolerable or aggravated at the time of the employee’s resignation that a reasonable person in the employee’s position would have resigned; and
(3) facts and circumstances showing that the employer had actual ... knowledge of the intolerable actions and conditions and of their impact on the employee and could have remedied the situation.
Maureen Arnett et al. v. HCN Dep’t of Admin., CV 00-60, -65 (HCN Tr. Ct., Jan. 8, 2001) at 16 (quoting Brady v. Elixir Industries, 196 Cal.App.3d 1299, 1306, 242 Cal.Rptr. 324 (Cal.Ct.App.1987)) (citing Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1244-45, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (1994)).[5]
*71 A “constructive discharge is not in itself a cause of action, although it is routinely alleged as a separate count in complaints for wrongful discharge. Rather, constructive discharge is a defense against the argument that no suit should lie in a specific case because the plaintiff left the job voluntarily.” Id. at 13 (quoting Vogts v. Perry Drug Stores, 204 Mich.App. 481, 487, 516 N.W.2d 102 (Mich.Ct.App.1994)). Consequently, the Court concluded that a tribal plaintiff could assert such a defense by reference to a former statutory definition of “discharge,” which constituted an “involuntary separation or termination of employment.” Id. at 14 (quoting Pers. Manual, Ch. 14 at 55 (updated Mar. 31, 1999) (emphasis added)). The Court has not had an opportunity to determine whether a constructive discharge defense remains available under the ERA, and declines to directly address the issue within this decision. The Court anticipates that the GRB will make this determination as a matter of first impression within a future administrative case.
Nonetheless, the Court feels capable of resolving the instant matter without unduly intruding into the reserved role of the administrative agency. The Court shall begin by commenting upon the nature of at-will employment. The ERA explains that an at-will “employee ... is subject to termination with or without cause or notice,” [6] and “include[s] Executive Managers of the Nation’s Gaming Facilities.” ERA, § 5.7o(l). Expanding on this concept, the Court previously explained that “ ‘either the employer or the employee may terminate the relationship at any time for any reason, or even no reasonf,] and that the position is held for an unspecified amount of time.’ ” Dan M. Sine v. Jacob Lonetree, as Pres. of the Ho-Chunk Nation, CV 97-143 (HCN Tr. Ct., Aug. 3, 1998) at 6 (quoting Joan Whitewater v. Millie Decorah, as Fin. Dir., et al., CV 96-88 (HCN Tr. Ct., Jan. 20, 1998) at 4). Therefore, “[i]t follows that there is no right to grieve because a grievance is a procedure whereby a party can challenge the basis of the decision to terminate an employee as unsubstantiated in law or in fact. If no reason need be given, it seems illogical to give someone a right to challenge....” Id. at 8.
As a result, while the Court acknowledges the GRB’s concern that the petitioner’s resignation “allow[ed] supervisory management the opportunity to ‘negotiate’ the terms of separation to circumvent the disciplinary process,” it considers the concern as misplaced. GRB Decision at 1. Quite simply, a supervisor has no obligation “to engage in the disciplinary process, which is set in place to ensure the rights of the employee” in relation to an at-will employee’s separation from employment because the individual maintains no property interest in his or her continued employment. Id. at 2. The Court appropriately resolves this constitutional issue since the HCN Legislature lacks the abili *72 ty to confer constitutional adjudication authority upon an executive administrative agency. LoneTree, SU 07-04 at 4-6.
Yet, this determination does not necessarily conclude the inquiry As the petitioner somewhat correctly notes, “the concept of constructive discharge is recognized as an exception to the employment-at-will doctrine.”[7] Reply Br. at 3 (citing Strozinsky, 237 Wis.2d at 39-40, 614 N.W.2d 443) However, a distinction exists in constructive discharge jurisprudence: “an employee must independently prove a breach of contract or tort in connection with employment termination .... .”[8] Turner, 7 Cal.4th at 1251, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (emphasis added). The present case must involve the latter identified species of constructive discharge earlier acknowledged by the Court. An at-will employee, by definition, exercises his or her duties in the absence of a contractual arrangement. “The nature of the plaintiffs at-will employment, authorizing termination for any reason, is incompatible with plaintiffs claim that [her] employer could not discharge [her] by subjecting [her] to intolerable conditions” in the absence of establishing a violation of a fundamental *73 public policy.[9] Starzynski v. Capital Pub. Radio, Inc., 88 Cal.App.4th 33, 41, 105 Cal.Rptr.2d 525 (Cal.Ct.App.2001).
The Supreme Court of California explained the justification underlying the public policy exception to at-will employment. Briefly, “an employer has no right to terminate employment for a reason that contravenes fundamental public policy as expressed in a constitutional or statutory provision.[10] An actual or constructive discharge in violation of fundamental public policy gives rise to a tort action in favor of the terminated employee.” Turner, 7 Cal.4th at 1252, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (citations omitted) (footnote added). More comprehensively,
at root, the public policy exception rests on the recognition that in a civilized society the rights of each person are necessarily limited by the rights of others and of the public at large; this is the delicate balance which holds such societies together. Accordingly, while an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy. Any other conclusion would sanction lawlessness, which courts by their very nature are bound to oppose.... Just as the individual employment agreement may not include terms which violate fundamental public poli-ey, so the more general “compensation bargain” cannot encompass conduct, such as sexual or racial discrimination, “obnoxious to the interests of the state and contrary to public policy and sound morality.”
Gantt v. Sentry Ins., 1 Cal.4th 1083, 1094-95, 1101, 4 Cal.Rptr.2d 874, 824 P.2d 680 (Cal.1992) (citations omitted).
When attempting to ascertain a violation of public policy, the Court cannot concentrate upon claims “that concern merely ordinary disputes between employer and employee.” Id. at 1090, 4 Cal.Rptr.2d 874, 824 P.2d 680. Instead, “the policy in question must involve a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer; in addition, the policy must be ‘fundamental,’ ‘substantial’ and “well established’ at the time of the discharge.” Id. (citation omitted). More specifically, “[t]ort claims for wrongful discharge typically arise when an employer retaliates against an employee for ‘(1) refusing to violate a statute ..., (2) performing a statutory obligation ..., (3) exercising a statutory right or privilege ..., or (4) reporting an alleged violation of a statute of public importance.’ ”[11] Turner, 7 Cal.4th at 1256, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (citing id. at 1091-92, 32 Cal.Rptr.2d 223, 876 P.2d 1022).
As stated above, the Court shall not adjudge whether the ERA should be interpreted in such a manner so as to recognize *74 a defense of constructive discharge. Similarly, the Court shall not pre-determine whether the GRB believes it can recognize the aforementioned public policy exception. However, the Court shall presume the existence of each for purposes of addressing the instant action because the petitioner could not prevail in the absence of either. In doing so, the Court does not appropriate the fact-finding role of the GRB. Essentially, “even if [the petitioner] could raise a triable issue of fact as to constructive discharge, h[er] case cannot reach the trier of fact unless [s]he can also show a wrongful discharge in violation of fundamental public policy.” Id. at 1256, 32 Cal.Rptr.2d 223, 876 P.2d 1022.
Quite clearly, the petitioner has not alleged a violation of fundamental public policy, but has rather attempted to avoid presenting such a showing. Supra note 7. The petitioner has nonetheless cited four (4) potential statutory provisions capable of evidencing policy violations. First, the petitioner apparently claims that Executive Director Decorah failed to adhere to the principles underlying the practice of affording performance evaluations. Reply Br. at 5 (citing ERA, § 5.14a-b). Yet, this assertion seemingly ignores the fact that the petitioner was an at-will employee dischargeable for any reason or no reason at all. Second, the petitioner apparently claims that Executive Director Decorah engaged in harassment when he requested that the petitioner submit her resignation. Id. (citing ERA, § 5.6d(i)). The ERA sanctions harassment since capable of “creating an unreasonably intimidating, hostile, and objectively offensive working environment.” ERA, § 5.6d(l). The petitioner, however, can hardly contend that her supervisor's actions constituted harassment when she states in her resignation letter that Executive Director Decorah “offer[ed] the following: Severance Pay for two weeks, Guaranteed Unemployment, Placement on a Recall List, and no notation of the discharge on my record.” Discharge of Employment/Resignation Letter (Feb. 5, 2008). The petitioner’s supervisor was under no obligation to offer the petitioner anything, and could have instead chosen to immediately terminate her. Third, the petitioner apparently claims that her supervisor’s actions prevented her from complying with the statutory procedure for submitting a resignation. Reply Br. at 5 (citing ERA, § 5.10b). The preceding discussion adequately addresses this contention Finally, the petitioner apparently claims that she could not be subjected “to coercive tactics that constitute a deprivation of a legally protected right.” Id. (citing ERA, § 5.30e(20)). The petitioner does not identify the legally protected right in question, but, as explained above, the petitioner maintained no right to procedural due process or to grieve, with the possible exception of a wrongful discharge in violation of fundamental public policy.
“The tort of wrongful discharge is not a vehicle for enforcement of an employer’s internal policies.... ” Turner, 7 Cal.4th at 1257, 32 Cal.Rptr.2d 223, 876 P.2d 1022. Unfortunately, the petitioner pleads nothing else. While one may empathize with the petitioner’s plight, she voluntarily accepted this potentiality by accepting an at-will position. The Court accordingly must deny the petitioner’s request for relief, and shall not remand the case to the GRB for further consideration with instructions.
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment or Order. Otherwise, “[a]ny final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of *75 Appellate Procedure [hereinafter HCN R.App. Pi], specifically Rides of Appellate Procedure, Rule 7, Right of Appeal.” HCN R. Civ. P. 61. The appellant “shall within sixty (60) calendar days after the day such judgment or order was rendered, file with the Supreme Court Clerk, a Notice of Appeal from such judgment or order, together with a filing fee as stated in the appendix or schedule of fees.” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgment or Trial Court Order must follow the [HCN R.App. P.].” HCN R. Civ. P. 61.

. The petitioner questioned the absence of a transcript of the GRB proceeding, believing that a limited hearing had occurred prior to the issuance of the administrative decision. Status Hr’g (LPER at 3, Aug. 26, 2008, 02:21:12 CDT); see also HCN R. Civ. P. 63(F)(2). The respondent indicated a lack of knowledge, and accepted the Court's suggestion that the parties depose GRB Chairperson Jon J.F. Greendeer to ascertain the truth. LPER at 3, 02:23:29 CDT. The petitioner agreed to file a supplemental Initial Brief within thirty (30) days of concluding the deposition(s), and the Court directed the parties to adhere to the presumptive procedural time-frame thereafter. Id. at 4, 02:26:10 CDT (citing HCN R. Civ. P. 63(E)).

. The Court does not perform a de novo review of administrative agency decisions, and, consequently, generally refrains from making independent factual findings. ERA, § 5.35e. In this instance, the GRB declined to find facts since it determined that it lacked authority to adjudicate a case presenting the defense of constructive discharge in the context of a proffered resignation. In the Matter of: Kristin White Eagle v. Dep’t of Bus. et al., GRB 018.08-T (GRB, Apr. 9, 2008) (hereinafter GRB Decision) at I. The GRB viewed this case as one "better suited for a Judicial Review," and it perceived “that a GRB dismissal would allow unmitigated access to the judicial process.” Id. Regardless, the Court shall hot accept the role of trier of fact, but rather simply reiterate the basic, undisputed factual assertions of the parties.

. The petitioner contends that she remains unaware of the full consequences of her resignation, but she does not dispute that Mr. Decorah made an assertion in this regard. Reply Br. at 2. The petitioner's resignation letter indicates as follows: “Joe Decorah stated that he was asking for my resignation and that along with this discharge he could offer the following: Severance Pay for two weeks, Guaranteed Unemployment, Placement on a Recall List, and no notation of the discharge on my record.” Discharge of Employ - nient/Resignation Letter (Feb. 5, 2008).

. The ERA does not establish a timeframe in which the GRB must convene a hearing after receiving a grievance. In this instance, fifty-seven (57) days elapsed between the filing of the February 11, 2008 grievance and the hearing.

. The respondent asserts that the "Arnett decision was based is [sic ] Strozinsky v. School District of Brown Deer[,] 237 Wis.2d 19, 614 N.W.2d 443 [(2000)].” Resp. Br. II al 4. However, in Arnett, the Court clearly states:
The Court hereby adopts the test for tor-tious constructive discharge as articulated by the courts of the State of California. The Court looks for guidance from this jurisdiction due to the thoroughness of examination and compatibility of the resulting standards with the [Ho Chunk Nation Personnel Policies & Procedures Manual (hereinafter Personnel Manual) ]. For example, the requirement that the employer possess actual knowledge of the intolerable conditions comports with the responsibility to report found in the Personnel Manual,
Arnett, CV 00-60, -65 at 16-17 (citations omitted). The successor legislation likewise contains a duty to report a species of conduct oftentimes associated with a constructive discharge case, i.e., sexual harassment. ERA, § 5.6e(2)(e).

. A statutory designation of "for cause” employment entitles an individual to minimum pre-deprivation procedural due process protection, but an at-will employee conversely lacks a property interest in his or her employment, thereby negating any claim to such protection. Willard LoneTree v. Larry Garvin, in his official capacity as Executive Dir, of HCN Heritage Pres., CV 06-74 (HCN Tr.Ct., Mar. 9, 2007) at 15 n. 10, aff’d, SU 07-04 (HCN S.Ct., Oct. 6, 2007); see also Const., Akt, X, § 1(a)(8). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source....” Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); see also Parmenton Decorah v. HCN Legislature et al., CV 99-08 (HCN Tr. Ct., July 1, 1999) at 16; Sine, CV 97-143 at 7.

. The petitioner cites a 2002 Seventh Circuit Court of Appeals case for the proposition that a subsequent refinement in relevant foreign case law recognizes “another way for an employee to prove constructive discharge,” thereby presumably removing the need “to allege harassment or any policy violations.” Reply Br. at 3-4. Specifically, the petitioner directs the Court’s attention to the following passage: “When an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge.” Id. at 4 (quoting EEOC v. Univ. of Chicago Hosps., 276 F.3d 326, 332 (7th Cir.2002)). However, the Seventh Circuit poses the foregoing as an alternative to demonstrating the presence of intolerable or aggravated working conditions. EEOC, 276 F.3d at 332. The Court does not remove public policy from the examination, and, in fact, the plaintiff alleged discrimination on the basis of religion, a violation of the Civil Rights Act. Id. at 330-31. Furthermore, the Seventh Circuit cites two (2) federal appellate decisions in support of its expansion of the single prong, and each case rests squarely upon violations of fundamental public policy. Id. at 332 (citing Burks v. Okla. Publ’g Co., 81 F.3d 975 (10th Cir.1996) (involving allegations of age discrimination); Lopez v. S.B. Thomas, Inc., 831 F.2d 1184 (2nd Cir.1987) (involving allegations of discrimination on the bases of race and national origin)). Finally, none of the referenced cases confronted the issue of at-will employment. The Seventh Circuit plaintiff, Victoria Levya, was employed in the capacity of a recruiter in the University of Chicago Hospitals. Id. at 328.

. The terms of employment for a “for cause” employee may be discerned from existing personnel policies, and. therefore, an employer may be capable of violating either an express or implied agreement. Turner, 7 Cal.4th at 1252, 32 Cal.Rptr.2d 223, 876 P.2d 1022. For example, the former Personnel Manual declared that "[tjhese policies are issued as the official directive of the obligations of the HoChunk [sic ] Nation and the employees to each other....” Pers. Manual Intro, at 2. Despite this contractual foundation, in Arnett, the plaintiff, a “for cause” employee, could not ultimately demonstrate that the employer breached any of its contractual obligations. Arnett, CV 00-60 (HCN Tr. Ct., Sept. 25, 2002) at 15-17. Moreover, the plaintiff failed to act as a reasonable person under the circumstances and also failed to provide the employer an opportunity to remedy the alleged intolerable condition(s). Id. at 17-21. In the tribal context, contractual and statutory obligations clearly converge, and, to reiterate, a “for cause” employee must additionally receive pre-termination procedural due process. However, “a valid procedural due process claim requires the employer's conduct to have been motivated by a desire to avoid subjecting its actions to the scrutiny of a termination-related hearing.” Fowler v. Carrollton Pub. Library, 799 F.2d 976, 981 (5th Cir.1986). No such allegation was present in Arnett.

.The majority of state courts recognize a public policy exception to the employment-at-will doctrine, including Wisconsin, see Brockmeyer v. Dun & Bradstreet, 113 Wis.2d 561, 572-73, 335 N.W.2d 834 (Wis.1983), but several states have declined to coalesce with the majority position. See, e.g., Murphy v. Am. Home Products Corp., 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (N.Y.1983). This Court shall not choose a position, leaving that initial decision to the GRB.

. The Court later "ackno\v!edge[d| the fact that fundamental public policy may be enunciated in administrative regulations that serve the [corresponding] statutory objective.” Green v. Ralee Eng'g Co., 19 Cal.4th 66, 80, 78 Cal.Rptr.2d 16, 960 P.2d 1046 (Cal.1998).

. In California, this guideline would be read to incorporate the modification pronounced in Green. Supra note 10.